# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| OCUSOFT, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-1037 |
| | § | |
| WALGREEN CO., *and* WALGREENS.COM, INC., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is plaintiff Ocusoft, Inc.'s ("Ocusoft") motion for a temporary restraining order and a motion for a preliminary injunction against defendants Walgreen Co. and Walgreens.com, Inc. (collectively, "Walgreens"). Dkt. 7. After considering the motion, response, reply, evidentiary record, and the applicable law, the court finds that Ocusoft's motion for a temporary restraining order should be DENIED, but the court will set a hearing on the motion for a preliminary injunction.

## I. BACKGROUND

This case involves a dispute between Ocusoft and Walgreens regarding false advertising. Ocusoft specializes in eye and skin care products and introduced the first commercially available eyelid cleanser, Ocusoft Lid Scrub. Dkts. 1, 7. Walgreens sells the Ocusoft brand in its stores and online. Dkt. 1. Walgreens also sells its private label eyelid cleansing pads, ("Walgreens Private Label") which are routinely placed next to Ocusoft's products on store shelves. Dkt. 1 at 6.

On April 4, 2017, Ocusoft filed its complaint alleging claims of: false advertising and unfair competition under the Lanham Act, federal patent infringement, and unfair competition, dilution, misappropriation of goodwill, and unjust enrichment under Texas common law. Dkt.1; 15 U.S.C.

§ 1125(A); 35 U.S.C. § 284. On April 5, 2017, Ocusoft filed its motion for a temporary restraining order ("TRO") and preliminary injunction against Walgreens for false advertising under the Lanham Act. Dkt. 7. In support of its TRO, Ocusoft alleges (1) that store clerks at three Walgreens stores in Texas made false representations that the Walgreens Private Label and the Ocusoft products were the same or were made by the same manufacturer, (2) that one local store in Texas falsely advertised consumer savings on a compare-and-save label showing a $7 discount, when the actual savings was $3.50, and (3) that Walgreens's online advertisements displayed the 2015 Walgreens Rinse-Free Pads, but customers were shipped the 2016 Walgreens Rinse-Free Pads, which contains different ingredients. Dkt. 7.

On April 24, 2017, Walgreens responded and discussed the actions it took to address the allegations raised in the TRO. Dkt. 18. Walgreens argues that it "never instructed its local store employees to inform customers that Walgreens-branded products are the same as, or are manufactured by the same company, as Ocusoft eyelid pads." *Id.* at 11. It also argued that these isolated incidents, including a single incorrect savings tag in one store were unlikely to influence the purchasing decisions of consumers. *Id.* at 20–22. Walgreens claims it is not aware of any customers other than Ocusoft's agents who asked whether the products are the same or were made by the same manufacturer, or of any online customers who complained about receiving the 2016 version of the product instead of the 2015 version. Dkt. 18, Ex. A (Duan Dec.), Ex. B (Fuller Dec.) (stating that less than one percent of Walgreens' sales of its Private Label eyelid products are sold online).

Nevertheless, Walgreens argues it has corrected the alleged misrepresentations, including replacing the incorrect compare-and-save tag, issuing internal communications to all store managers nationwide to instruct local store employees to not tell customers that the Ocusoft and Walgreens

2

Private Label products are the same or are from the same manufacturer, and removing images of the 2015 Walgreens Rinse-Free Pads from its website. Dkt. 18 at 11–12, Exs. A, B, C.

On May 1, 2017, Ocusoft filed its reply and argued that a TRO is still necessary because at least one Walgreens store in Florida displayed an incorrect compare-and-save tag and an employee who was questioned about the Walgreens Private Label and Ocusoft products said that they were the same. Dkt. 25, Ex. A (Bernard Dec.).

## II. LEGAL STANDARD

A party seeking a temporary restraining order or a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure must demonstrate four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any prejudice the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009); *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999). Injunctive relief, particularly at the preliminary stages of litigation, is an extraordinary remedy that requires an unequivocal showing of the need for the relief to issue. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). Thus, injunctive relief should only be granted where the movant has "clearly carried the burden of persuasion." *Bluefield Water Ass'n*, 577 F.3d at 252–53; *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009).

## III. ANALYSIS

Ocusoft moves for a temporary restraining order to prevent Walgreens from making false representations that the Walgreens' Private Label product is the same as Ocusoft's product. Dkt. 7.

Walgreens responded by listing the actions it took to correct any inaccuracies in its online and in-store advertisements and argues that Ocusoft is not entitled to injunctive relief. Dkt. 18. Injunctive relief is an extraordinary remedy, and the court finds that Ocusoft has not carried its burden of persuasion with regard to proving the element of irreparable injury required for injunctive relief. *Bluefield Water*, 577 F.3d at 252–53.

Ocusoft argues it is entitled to a presumption of irreparable harm. Dkt. 7 at 42 (citing *Greater Houston Transp. Co. v. Uber Techs., Inc.*, 155 F. Supp. 3d 670, 703 (S.D. Tex. 2015) (Gilmore, J.) ("Federal Courts have routinely held that injury should be presumed when a Lanham Act claim involves false or misleading comparative advertisements."). Ocusoft also cites to cases where courts presume injury after plaintiffs establish a likelihood of confusion in trademark infringement cases. Dkt. 25 at 3 (citing *T-Mobile US, Inc. v. AIO Wireless LLC*, 991 F. Supp. 2d 888, 926 (S.D. Tex. 2014) (Rosenthal, J.) ("All that must be proven to establish liability and the need for an injunction against [trademark] infringement is the likelihood of confusion—injury is presumed.") (citing *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) (holding that a court may issue an injunction against trademark infringement once a likelihood of confusion is shown because irreparable injury is then presumed).

Walgreens argues that the Fifth Circuit has not clearly determined that claims of false advertisement are entitled to a presumption of harm. Dkt. 18 at 12 (citing *Paulsson Geophysical Services, Inc. v. Sigmar*, 529 F.3d 303, 313 (5th Cir. 2008) ("We have no need to decide whether a court may presume irreparable injury upon finding a likelihood of confusion in a trademark case, a difficult question considering the Supreme Court's opinion in *eBay*.")); *see also ADT, LLC v.*

*Capital Connect, Inc.*, 145 F. Supp. 3d 671, 694 (N.D. Tex. 2015) (collecting cases on Fifth Circuit's split on presumption of irreparable harm in Lanham Act cases).

> [E]ven assuming [plaintiff] is able to prove [defendant's] label was literally false, because the Fifth Circuit has not held that a presumption of causation and harm is applicable to a product label and because other circuits have declined to apply the presumption in instances in which a direct competitor engages in false non-comparative advertising, the Court is unwilling to conclude as a matter of law that a presumption of causation and injury is applicable to the facts of the case.

*Healthpoint, Ltd. v. Stratus Pharm., Inc.*, 273 F. Supp. 2d 871, 886 (W.D. Tex. 2001) (comparing cases).

In the alternative, Walgreens argues that even if the court applies a presumption of harm, that presumption is rebutted by Ocusoft's delay in seeking an injunction, and by Ocusoft's lack of evidence of any loss of market share or damage to goodwill, and any presumption is moot following Walgreens' corrective actions. Dkt. 18. Without deciding whether Ocusoft is entitled to a presumption of harm, the court finds that Walgreens' corrective actions obviates any imminent harm that Ocusoft alleges.

First, while Walgreens argues that Ocusoft ten-week delay in seeking a TRO rebuts any presumption of irreparable harm, the court is not persuaded. Dkt. 18; *see Solofill, LLC v. Adrien Rivera*, No. 16-2702, slip copy (S.D. Tex. Feb. 8, 2017) (Miller, J.) (collecting cases relating to delay); *see e.g.*, *ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 698 (N.D. Tex. 2015) (finding an eight-month delay in seeking injunctive relief without justification meant failure to prove imminent need); *Ellipse Communications, Inc. v. Caven*, No. CIV.A.3-07-CV-1922-O, 2009 WL 497268, at *2 (N.D. Tex. Feb. 26, 2009) (denying an injunction because a seven-month delay, with no excuse, rebuts the presumption of irreparable harm).

Walgreens alleges that Ocusoft never communicated its concerns to Walgreens despite learning of the facts supporting its TRO as early as January 2017 and having last communicated with Walgreens on other matters in March 2017. Dkt. 18 at 10; Dkt. 18, Ex. C (Holmgren Dec.). Ocusoft replied that it filed its TRO after completing its investigation, which included store visits, lab testing, and a survey. Dkt. 25. The court disagrees with Walgreens and finds that a two-to-three-month delay in seeking a TRO does not foreclose injunctive relief.

Second, Ocusoft alleges loss of market share, goodwill, or reputation due to Walgreens' false statements, but presents no such evidence in the record. Dkt. 7. "Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) (finding plaintiff failed to make a clear showing of irreparable harm when the only evidence presented was a single affidavit of plaintiff's agent who speculated multiple lawsuits could be filed and cause plaintiff irreparable harm); *see e.g.*, *Joseph Paul Corp. v. Trademark Custom Homes, Inc.*, 3:16-CV-1651-L, 2016 WL 4944370, at *13 (N.D. Tex. Sept. 16, 2016) ("Plaintiff [] presented no evidence when it initially filed its [motion for TRO and preliminary injunction] to support its conclusory assertion regarding the possibility of permanent loss of customers to a competitor or the loss of goodwill.").

While Ocusoft argues that "loss of market share due to false advertising constitutes irreparable harm," Ocusoft has not presented any data on its alleged loss of market share. Dkt. 7 at 43 (citing *OrthoAccel Techs., Inc. v. Propel Orthodontics, LLC*, 4:16-CV-350, 2016 WL 6248711, at *7 (E.D. Tex. Oct. 26, 2016) (holding that the plaintiff established loss of market share after providing court testimony and data of annual operating plan and actual revenues)). Additionally, Ocusoft cites to other cases that are unrelated to false advertisement claims or are not binding on this

court. Dkt. 7. Because Ocusoft presents no evidence on its claims of loss of market share and tarnished goodwill and reputation, the court finds that Ocusoft did not present a clear showing of irreparable harm.

Third, the court finds that Walgreens' remedial actions address all of the requests in Ocusoft's proposed TRO that seeks to enjoin Walgreens employees from (1) representing that Walgreens' Private Label Products contain the same ingredients or (2) are made by the same manufacturer as Ocusoft, (3) falsely advertising the 2015 Walgreens Rinse-Free Pads on the website, and (4) falsely advertising the price of the savings associated with purchasing a Walgreens Private Label product over the Ocusoft product. *Compare* Dkt. 18 (Walgreens' Resp.) *with* Dkt. 7, Ex. 2 (Proposed TRO).

"[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. A presently existing actual threat must be shown." *United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001). Because Walgreens has taken steps to ensure that the allegedly false statements will not be made in the future, the court agrees with Walgreens that there is no immediate threat of irreparable injury. Further, the court is not persuaded that Ocusoft will face irreparable harm after it presented one additional allegation of an incorrect compare-and-save tag in one store in Florida. Dkt. 25 (Def.'s Reply). The court finds that Ocusoft has not met its burden of persuasion of showing it will face irreparable harm should the court deny the TRO. Accordingly, Ocusoft's application for a TRO is DENIED.

## IV. Conclusion

The court finds that Ocusoft has not met the burden of persuasion necessary for the court to grant a temporary restraining order. Therefore, the court DENIES Ocusoft's motion for a temporary restraining order. Dkt. 7. The court, however, has set an oral hearing on Ocusoft's motion for a preliminary injunction on June 13, 2017.

Signed at Houston, Texas on May 8, 2017.

_____
Gray H. Miller
United States District Judge